UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BOARD OF TRUSTEES OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, )
  )
     Plaintiff, )
  )   12 C 4097
  vs. )
  )
ALLISON ENTERPRISES, INC., )
d/b/a MID AMERICA VISION and )
LAWRENCE M. SILVER, )
  )
     Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, U.S. District Judge:

Before the Court is a motion to dismiss by Defendants Allison Enterprises, Inc.

("Allison"), d/b/a Mid America Vision ("MAV") and Lawrence M. Silver ("Silver")

(together "Defendants") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

For the following reasons, Defendants' motion is denied.

## BACKGROUND[1]

The Plaintiff, the Board of Trustees (the "Board"), is a fiduciary to the Health and

Welfare Department of the Construction and General Laborers' District Council of

---

[1] In assessing both the Court's subject-matter jurisdiction and the complaint's legal sufficiency, the Court accepts all well-pled allegations as true, and draws all inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 1990).

Chicago and Vicinity (the "Fund"). The Fund is an employee benefit plan (the "Plan") as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1002(3). MAV, an Illinois corporation, and Silver, MAV's President and primary shareholder, were fiduciaries to the Plan.

Pursuant to their roles as fiduciaries, MAV and the Fund entered into the Vision Services Discount Fee Agreement (the "Agreement") on July 1, 1997, taking effect immediately. The Agreement provided for the Fund's participants' and beneficiaries' ("Participants") attainment and payment of vision care ("care"). Under the Agreement, Participants received care from vision care providers ("Providers"), who would invoice MAV for the rendered services at pre-negotiated rates. As the Plan's claims administrator, MAV would grant or deny Providers' claims. MAV would then submit approved claims to the Fund, which would in turn tender Plan assets to MAV. Upon receipt of Plan assets, MAV was obligated to remit payment directly to the Providers for the amount owed. Under the Agreement, "[n]either the Fund, nor its participants or beneficiaries shall have any obligation to directly pay a [MAV] participating provider any of the amounts" covered by Plan assets. The Agreement further granted the Fund the right to audit MAV's books that related to the Agreement. Unless the Agreement was terminated by either MAV or the Board, it automatically renewed annually. MAV could terminate the Agreement for cause only, while the Board could freely terminate

the Agreement as long as it provided MAV at least sixty days written notice of its intent to do so.

On October 6, 2011, the Fund notified MAV of its intent to terminate the Agreement on January 1, 2012. Between October 6th and January 1st, the Fund continued to receive approved claims from, and tendered at least $1 million to MAV. Despite this, MAV and Silver withheld at least $95,000 of Plan assets owed to Providers. Silver received multiple phone calls from the Fund and shortchanged Providers who were inquiring into the whereabouts of the withheld monies, but Silver provided no substantive response. As a result of Defendants' failure to pay the Providers, the Providers have threatened to directly bill Participants for the amounts owed by Defendants.

The Board brought a four-count complaint against Allison and Silver for breach of fiduciary duty and unjust enrichment under ERISA, 29 U.S.C. §§ 1109(a), 1132(a)(3), for Defendants' withholding Plan assets and failing to pay Providers as required under the Agreement. The Board seeks damages, restitution, an audit of MAV's books, and injunctive relief. Defendants now bring a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim, respectively.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction over its claims. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc). The Court may consider matters outside of the complaint in ruling on a motion to dismiss for lack of subject-matter jurisdiction. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations; it must only provide enough support to raise its right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a viable claim must be facially plausible, i.e., the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

### I.    Motion to Dismiss under Rule 12(b)(1)

Defendants argue that the Board lacks standing to bring this suit under Article III of the Constitution. Article III limits federal courts' jurisdiction to claims presenting

a case or controversy between the plaintiff and defendant. *Warth v. Sedin*, 422 U.S. 490, 498 (1975). For a plaintiff to establish Article III standing, it must demonstrate:

> (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical;
>
> (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and
>
> (iii) a likelihood that the injury will be redressed by a favorable decision.

*Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003); *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendants assert that the Board fails to demonstrate an injury in fact, and that a favorable decision will not redress an injury. Defendants argue that the Board has not satisfied the injury in fact prong because Participants have received care. As fiduciary to the Plan and the Fund, the Board is under a legal obligation to ensure that Plan assets are not misappropriated. *See* 29 U.S.C. § 1103(c)(1) (requiring ERISA plan fiduciaries to hold and dispose of a plan's assets for the exclusive benefit of plan participants and their beneficiaries); *id.* § 1104(a)(1)(A) (a fiduciary shall discharge its duties pertaining to an ERISA benefit plan solely in the interest of plan participants and beneficiaries); *id.* § 1109 (a breach of a fiduciary's duties with respect to an ERISA benefit plan shall be personally liable for damages resulting from the breach). ERISA also grants

fiduciaries a statutory right to seek legal and equitable remedies on behalf of plan participants and beneficiaries. *See* 29 U.S.C. §§ 1109, 1132. The complaint alleges that the Board received approved claims from MAV, transferred Plan assets to MAV, and that MAV kept at least $95,000 of Plan assets that it was obligated to pay to Providers. As a consequence, Providers have threatened to seek payment directly from the Plan's beneficiaries. Based on these allegations, the Court can comfortably infer that Defendants failed to pay Providers for the Plan Assets tendered to MAV, and that this has deprived the Board of Plan assets. This sufficiently establishes that the Board's legal interests suffered concrete and particularized harm.

Defendants rely on *Tobin for Governor v. Ill. State Bd. of Elections*, in arguing that the complaint's allegations of harm to the Board and the Participants are too speculative to pass muster under Article III. 268 F.3d 517, 528 (7th Cir. 2001). In *Tobin*, the Seventh Circuit held that the plaintiffs lacked standing because "several contingencies would have to occur" for a "realistic threat" of harm to materialize. *Id.* Here, the Board complains that it has already been deprived of Plan assets as a result of Defendants' withholding Plan assets. Furthermore, some Providers have warned that they will pursue the money that MAV owes them from Participants, indicating that the potential harm is far more likely to develop than lack of a "realistic threat" present in

*Tobin*. *Tobin* therefore does not dissuade the Court's inclination to find that injury in fact has been established in this case.

Defendants also assert that a decision in favor of the Board would not redress any harm done to the Board, claiming that a favorable decision would provide a "windfall" to the Board. The Court fails to see how MAV's withholding Plan assets owed to Providers for the provision of Participants' care would provide any such ill-gotten gain to the Board. Accordingly, this contention is unpersuasive.

Because the Board establishes Article III standing, the Defendants' motion to dismiss under Rule 12(b)(1) is denied.

## II.    Motion to Dismiss under Rule 12(b)(6)

### A.    The Board's Claims for Breach of Fiduciary Duty

The Board alleges that Defendants violated their fiduciary duties under 29 U.S.C. § 1104(a)(1)(A)(i) and (B) by withholding Plan assets for their own benefit and failing to pay Providers as required under the Agreement. Defendants contend that the complaint fails to adequately allege that Silver and Allison were fiduciaries to the Plan, or that they breached any fiduciary duties.

A person is a fiduciary to an ERISA benefit plan if "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,"

or "he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii). In determining whether one is a fiduciary, the Court looks not to the person's formal designation; rather, one's status as a fiduciary "should be viewed in functional terms of control and authority over the plan." *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 990 (7th Cir. 2005); *citing Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (quotation marks omitted). Thus, the Court focuses on whether the Defendants exercised control or authority over a particular ERISA plan benefit. *Ruiz*, 400 F.3d at 990.

As detailed above, the complaint alleges that MAV acted as the claims administrator pursuant to the Agreement, with the authority to grant or deny individual claims for rendered care. It pre-negotiated rates with Providers and the Fund relating to claims. The complaint further specifies how Silver, as MAV's owner and primary decision-maker, repeatedly received calls from the Fund and Providers inquiring into the status of the withheld Plan assets, but to no avail. These allegations allow for the plausible inference that Silver and MAV exercised control and authority over the Plan's management and the administration of claims sufficient to establish their fiduciary status. *See Smith v. Med. Benefit Adm'rs Group, Inc.*, 639 F.3d 277, 281 (7th Cir. 2011) (a claims administrator with the power to grant or deny a participant's claim for benefits under an ERISA benefit plan is a fiduciary under ERISA) (citation omitted).

Defendants lastly argue that the Board's allegations are too vague and conclusory to state a claim under *Iqbal* and *Twombly*. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff only needs to provide a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012); *quoting Twombly*, 550 U.S. at 555 (citation omitted). The Board's allegations easily cross this threshold.

Because the Board has sufficiently alleged that Defendants were fiduciaries to the Plan and the Fund, and that they breached those duties under ERISA, Defendants' motion to dismiss is denied.

## B.    The Board's Claims for Unjust Enrichment

The Board also seeks restitution for Defendants' alleged retention of Plan assets under a theory of unjust enrichment. 29 U.S.C. § 1132(a)(3). Defendants argue that the remedy that the Board seeks is legal in nature, and therefore not cognizable under § 1132(a)(3), which permits equitable relief only.

Under ERISA, plan participants, beneficiaries, or fiduciaries may bring a civil action "to enjoin any act or practice that violates [ERISA] or the terms of the benefit plan, or to obtain other equitable relief (I) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3)(A), (B). Whether restitution is deemed a legal or equitable remedy depends on "the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Great-West Life &*

*Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002).  A plaintiff may seek restitution under § 1132(a)(3) where it seeks to be restored of the property that is wrongfully in the defendant's possession.  *Id.*; *see also Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 615 (7th Cir. 1995) (recognizing that a claim for restitution under § 1132(a)(3) may lie "when one party has been enriched at another's expense.").

Here, the Board alleges that it tendered Plan assets to MAV with the expectation that MAV would satisfy Providers' claims for care rendered to Participants.  Silver and MAV are alleged to have withheld at least $95,000 of Plan assets intended for Providers, keeping the money for their own benefit.  The Board alleges that MAV and Silver have been enriched with Plan assets to which they are not entitled.  Accordingly, the Board states a viable claim for equitable relief.  Defendants' motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss under Rules 12(b)(1) and 12 (b)(6) are denied.


_____
Charles P. Kocoras
United States District Judge


Dated:    October 4, 2012