UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Board of Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 12 C 4097 |
| v. | ) ) | Judge Charles P. Kocoras |
| Allison Enterprises, Inc. d/b/a Mid America Vision, Mid America Benefit Services, Inc., and Lawrence M. Silver, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

CHARLES P. KOCORAS, U.S. District Judge:

Plaintiff Board of Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Board") filed this action in May 2012, seeking to recover certain ERISA plan assets tendered to, and withheld by, Defendants Allison Enterprises, Inc. d/b/a Mid America Vision ("Mid America") and its president and sole shareholder, Lawrence Silver. After significant discovery and motion practice, in August 2014, the Court granted summary judgment in favor of the Board on all claims against all defendants, and in February 2016, entered Judgment in favor of the Board, including prejudgment interest of $46,078.76. Dkts. 140-41, 155-57. Now before the Court are both sides' motions regarding fees and costs [165, 170]. For the reasons below, both motions are granted in part, and the Court awards the Board costs of $7,896.29 and fees of $336,793.12.

## BACKGROUND

The Board's original complaint in this case alleged that certain ERISA plan assets were disbursed to Mid America pursuant to the parties' "Vision Services Discount Fee Agreement" for the purpose of Mid America, in turn, remitting payment to various service providers for approved claims, but that Mid America and Silver "failed and refused to properly pay the Plan assets received from the Fund to the service Providers whose claims were approved, instead keeping the entirety of such Plan assets for their own benefit." Dkt. 1, ¶¶ 10-25. The Board asserted claims against Mid America and Silver for breach of fiduciary duty under ERISA and unjust enrichment, *id*. at ¶¶ 33-53, and then filed an amended complaint in October 2012, asserting the same claims also against another company of which Silver was president and sole shareholder, Mid America Benefit Services, Inc. Dkt. 27, ¶¶ 7, 33-53.

After significant discovery and motion practice, in August 2014, the Court granted summary judgment in favor of the Board on all claims against all defendants. Dkts. 140-41. That Opinion concluded that "the only issue left to be decided is the extent of damages," Dkt. 141, at 32; and, given "uncertainty as to the amount of missing Plan assets" and "a dispute between the parties as to the amount of money that the Fund paid to Mid America" during the relevant time period, the Court ordered "an accounting of Mid America's assets during this period to determine the appropriate damage amount." *Id*. The Court also instructed the Board to "submit its claimed damages in full to the Court" when this accounting was completed, and granted "the opportunity for Defendants to contest the amount requested at the appropriate time." *Id*. at 32-33.

Silver responded to the Court's summary judgment ruling with a Motion to Reconsider, Dkt. 142, which the Court denied on October 7, 2014. Dkt. 144. No further activity is reflected on the case docket until ten months later, when the Board filed the parties' "Stipulation as to Damages" on August 20, 2015. Dkt. 145. That Stipulation stated that "the Parties have reviewed the relevant documents and come to an agreement regarding the amount of damages encompassed by the Court's order" and "stipulate that the amount of damages in this case total $399,055.66." *Id*. at ¶¶ 1-2. The Stipulation indicates that Silver signed it on June 19, 2015, but provided that it "not be filed with the Court until thirty (30) days after the Trustees respond to Defendant Silver's settlement offer, or for such longer period as the parties may agree while they continue to pursue settlement negotiations." *Id*. at ¶ 3. Two months later, the Board then filed a motion requesting judgment for the stipulated damages amount ($399,055.66) plus prejudgment interest of roughly $46,000.00. Dkt. 146, ¶ 4. The Court granted the Board's request for prejudgment interest, but denied its request for the stipulated damages amount because Silver had already paid the $399,055.66 a few days after the Board filed its motion seeking final judgment. *See* Dkt. 155, at 2, 5.

The Board now seeks fees and costs pursuant to ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1), Fed. R. Civ. P. 54, and Local Rule 54.3. *See* Dkt. 171, at 1. Specifically, the Board seeks costs of $11,770.96 and attorneys' fees of $360,908.12. *Id*. at 4; Dkt. 170. Silver disputes certain of the charges itemized in the Board's Bill of Costs, disputes that the Board is entitled to any attorneys' fees, and contests the amount of fees sought for various reasons. The Court addresses each argument, in turn.

## DISCUSSION

**I. Costs**

The Board's Bill of Costs originally sought $12,229.06, including $528.00 in clerk, subpoena, and summons fees; $1,456.55 in transcript fees; and $10,244.51 in copying costs. *See* Dkt. 163. These costs were taxed (Dkt. 164), after which Silver filed a motion seeking to reduce the copying charges and transcript fees. Dkt. 165. As to the $10,244.51 in copying charges, Silver argues that the two-page invoice tendered by the Board to support those costs fails to demonstrate "exactly how exemplification and copying costs were incurred in excess of $10,000 in this matter," whether "the costs incurred were necessary for the case," "what documents these costs refer to," whether the copying costs "were necessary and reasonable," or whether "these costs relate to documents or exhibits prepared for use in this case." Dkt. 165, at 4-6. The Board responds that "Plaintiff was required to pick up, copy and review 23 boxes of documents from MAV's office," that "Silver could have had the documents copied and sent to Plaintiff, but instead he forced Plaintiff to review the documents on MAV's premises," and "Plaintiff then reasonably had the documents copied so that it could review them and use them as needed for depositions and summary judgment briefing, which it did." Dkt. 171, at 13-14.

Section 1920(4) allows costs for copies "necessarily obtained for use in the case," not merely for the "convenience" of counsel. *Montanez v. Simon*, 755 F.3d 547, 557 (7th Cir. 2014) (citing 28 U.S.C. § 1920(4)). While a prevailing party need not "submit a bill of costs containing a description so detailed as to make it impossible

4

economically to recover photocopying costs," it must "provide the best breakdown obtainable from the retained records." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). The invoice that the Board submitted with its Bill of Costs fails to provide such a breakdown. Based on the Board's explanation that it "was required to pick up, copy and review 23 boxes of documents from MAV's office," Dkt. 171, at 13-14, the Court grants the $6,416.34 "Scan" charge on that invoice for a quantity of 45,831 pages as "reasonable and recoverable" copying of "discovery materials" necessary for use in the case, at a "reasonable" rate of $.14 per page. *See* Dkt. 163-1, at 3.[1] The Court will also allow the $40 "Pickup & Delivery" charge apparently required to retrieve the documents from MAV's office. *Id*. But the remaining charges on the invoice are wholly unexplained, making it impossible for the Court to assess whether those charges were necessary, or rather, for the convenience of counsel. *See id*. (listing charges for "Electronic Processing – Image Endorsing," "Electronic Processing – OCR," "Labor – Technical Labor – Export," "Media – CD Master," and "Media – DVD Master"). These unexplained charges—totaling $3,788.17—are therefore denied.[2]

---

1 *See Phillips v. Allen*, No. 07 C 666, 2011 WL 1884558, at *3 (N.D. Ill. May 6, 2011) ("description of what actually was copied is vague, but because the materials copied were apparently 'Bates Stamped,' the Court infers they were discovery materials necessary for use . . . in the case."); *Wells v. Johnson*, No. 06 C 6284, 2012 WL 3245955, at *1 (N.D. Ill. Aug. 6, 2012) ($.015 per page is reasonable); *Perry v. Chi.*, No. 08 C 4730, 2011 WL 612342, at *2 (N.D. Ill. Feb. 15, 2011) (same, citing cases).

2 *See Wilson v. Career Educ. Corp.*, No. 11 C 5453, 2016 WL 1719770, at *5 N.D. Ill. Apr. 29, 2016) (denying "'technical time' incurred by the copying company"); *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, No. 13 C 321, 2016 WL

Silver next challenges the $1,456.55 in transcript fees sought by the Board in two respects: "(1) costs in excess of the maximum rate set by the Judicial Conference of the United States; and (2) unrecoverable shipping and handling costs." Dkt. 165, at 6. As to the first, the Board "agrees to reduce the transcript cost to $813.95 to reflect the fees of the Judicial Conference of the United States." Dkt. 171, at 14. As to the second, Silver disputes a $37.50 shipping charge. Dkt. 165, at 7-8. Whereas the Court allowed a delivery charge required to retrieve multiple boxes of discovery documents from MAV's offices, shipping and administrative charges for deposition transcripts are generally disallowed as "ordinary business expenses," particularly when they are unexplained, as is the case here.[3] The Court therefore denies these charges and allows only the charges for the transcript and the additional copy allowed by Local Rule 54.1. *See* Dkt. 171, at 14 (seeking $98 additional copy under L.R. 54.1). Accordingly, the Court reduces the transcript-related fees itemized in the Board's Bill of Costs by $544.60, from $1,456.55 to $911.95 ($813.95 for the transcript and $98 for the additional copy). Combined with the $3,788.17 reduction in copying charges, the Board's Bill of Costs is thus reduced by $4,332.77, from $12,229.06 to $7,896.29.

---

316865, at *6 (N.D. Ill. Jan. 26, 2016) ("volume mastering," "unitization," "document imaging," "CD duplication," and "media formatting," which party "made no effort to show are tantamount to 'making copies' . . . are not recoverable"); *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 52 F. Supp. 3d 893, 903 (N.D. Ill. 2014) ("Security has not shown that OCR was a necessary part of 'making copies' in this case.").

3 *See, e.g., Angevine v. WaterSaver Faucet Co.*, No. 02 C 8114, 2003 WL 23019165, at *5 (N.D. Ill. Dec. 23, 2003) (citing cases); *Kellogg*, 2016 WL 316865, at *3 (citing *Chi. Bd. Options Exchange, Inc. v. Int'l Sec. Exchange, LLC*, No. 07 CV 623, 2014 WL 125937, at *3-4 (N.D. Ill. Jan. 14, 2014) (collecting cases)).

## II. Attorneys' Fees

Silver next challenges the Board's request for $360,908.12 in attorneys' fees on two grounds: that (1) "an award of attorney's fees is not appropriate because his position was substantially justified, taken in good faith, and not to harass the plaintiff," and "an application of the five factors of the balancing test weights against an ward of fees," Dkt. 174, at 4; and (2) "the amount of attorney's fees requested by the Fund is wholly unreasonable." *Id*. at 11. As explained below, the Court rejects the first argument, but makes limited adjustments to the fees sought by the Board based on certain of Silver's objections raised in the second argument.

### A. The Board's Entitlement to Fees

"Fees may be awarded under ERISA to a party who achieves 'some degree of success on the merits.'" *Temme v. Bemis Co.*, 762 F.3d 544, 549 (7th Cir. 2014) (*per curiam*) (quoting *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 255 (2010)). Both before and after *Hardt*, the Seventh Circuit has "recognized a 'modest presumption' in favor of awarding fees to the prevailing party, though that presumption can be rebutted." *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011) (quotation omitted). Also before and since *Hardt*, the Seventh Circuit has recognized two tests for determining whether to award fees under ERISA. *Temme*, 762 F.3d at 549. One test "asked simply whether the position of the party against whom the fees are sought was 'substantially justified.' If so, no fees were awarded." *Id*. The second test, "adopted in some form by all our sister circuits, provided the district court with five factors to guide its discretion." *Id*. Those five factors are as follows:

> (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy personally an award of attorney fees; (3) whether an award of attorney fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and, (5) the relative merits of the parties' positions.

*Jackman*, 641 F.3d at 866.

As the Seventh Circuit has noted, "no Court of Appeals since *Hardt* has abandoned its five-factor test." *Temme*, 762 F.3d at 550. Still, since *Hardt*, the Seventh Circuit has "largely declined to reconsider" whether the five-factor test "remains applicable," until "confronted with a case where the answer makes a difference to the outcome." *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076, 1089 (7th Cir. 2012). In this Court's view, the instant case is not one "where the answer makes a difference to the outcome." There is no dispute that the Board achieved "some degree of success on the merits," and as explained below, the Board is entitled to fees under the "substantially justified" test and the "five-factor" test. Nor has Silver remotely rebutted the presumption in favor of awarding the Board some measure of fees in this case.

For instance, the Court flatly rejects Silver's argument now that his position in this litigation was "substantially justified" for the last four years. Dkt. 174, at 4. As the Board persuasively argues, the Court has repeatedly rejected the positions taken by Silver and his companies in this case since 2012—at the pleadings stage (*see* Dkts. 26, 78), during discovery (*see* Dkt. 91), on summary judgment (Dkt. 141), a motion for reconsideration (Dkt. 144), and in opposition to the Board's request for prejudgment

8

interest (Dkt. 155). Indeed, as the Court's summary judgment ruling explained, Silver's "failure to remit Plan assets to pay claims incurred by Plan participants and beneficiaries and his retention of those funds is such a clear breach of his fiduciary duties to the Plan under 29 U.S.C. §§ [1104] and 1106 that it does not need to be expounded upon further." Dkt. 141, at 25. On these facts, the Court has no trouble concluding that Silver's positions in this lawsuit were not "substantially justified."

Silver fares no better under the "five-factor" test. Regarding the first factor—"the degree of the offending party's culpability or bad faith"—Seventh Circuit case law makes clear that, since *Hardt*, a district court "need not find that the party ordered to pay fees has engaged in harassment or otherwise litigated in bad faith." *Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011). But in any case, the Court is unpersuaded that Silver's defense of the Board's claims was (despite its lack of merit) "taken in good faith" as he now argues. Dkt. 174, at 4. As the Court's Order awarding prejudgment interest to the Board explained, "while the Court's summary judgment ruling may not have made an explicit finding that Silver acted in bad faith, as even he tacitly acknowledges (*see* Dkt. 148 at 4), the Court was unimpressed by Silver's supposed good faith, and remains so." Dkt. 155, at 4. As that Order also noted, Silver's summary judgment opposition pointed to no evidence "that he made reasonable attempts to remedy the situation" over which the Board sued—specifically, "misappropriation of Plan assets" that "benefited Silver's interests at the expense of Plan participants and beneficiaries"—and Silver's belated settlements with various Providers "was too little too late." *Id.*; Dkt. 141, at 25-26, 29.

The second factor—"the ability of the offending party to satisfy personally an award of attorney fees"—similarly fails to assist Silver. While he maintains that "an award of attorney's fees and costs would impose a significant hardship on Silver," his only support for that proposition is that he "has not paid his lawyers in this case." Dkt. 174, at 10. But the Court finds such nonpayment to be far less probative than Silver's payment of nearly $400,000.00 in stipulated damages four days after the Board sought a judgment for that amount, Dkt. 148, at 1; his $46,000.00 payment of the Court's prejudgment interest award within a week of that Judgment Order, Dkt. 171-3, at 220; and his additional payments of $167,000.00 to settle various provider claims outside of the litigation. Dkt. 148, at 3-5. Clearly, Silver has had access to significant assets throughout this suit, despite his failure to pay his lawyers during the same timeframe.

The third factor—"whether an award of attorney fees would deter other persons acting under similar circumstances"—plainly augurs for a fee award. The brazenness of Silver's misappropriation of Plan assets is itself conduct to be deterred. And Silver's commitment to a non-meritorious defense over a four-year period, depriving providers and the Plan of payments throughout much of that timeframe, is also conduct to be strongly discouraged. *See Temme*, 762 F.3d at 551 ("the desirability of preventing other companies from cutting off or needlessly delaying benefits in a similar manner . . . tilts the third of the five factors we consider—the deterrence effect—in favor of awarding fees"). For the same reasons, the final two factors—"the relative merits of the parties' positions" and the "benefit conferred on members of the plan as a whole" —also support an award of fees.

**B. Reasonableness of the Fees Sought**

Only the amount of fees to be awarded remains to be determined, which requires a determination of "the hours reasonably expended" and "a reasonable hourly rate." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012). And while there is no dispute as to the hourly rates charged by the Board's counsel, the Court nevertheless retains an obligation to determine the reasonableness of the fees sought, *see Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) ("the district court still bears the responsibility of justifying its conclusions"), and thus considers that issue first.

Silver does not dispute the hourly rates charged by the Board's counsel, presumably "because they are equal to or less than the rates utilized by Defendants' counsel." Dkt. 171, at 10 (citing Dkt. 171-4). We know this because Local Rule 54.3 required Silver's counsel to disclose the fees billed and paid by a respondent to a motion for fees and the hourly rates charged by such respondent's counsel, in order to prevent "hypocritical objections." *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir.2006) ("the letter and spirit of Local Rule 54.3" is to require a party opposing a fee request to present its own attorneys' billing records, in order to avoid "hypocritical objections"). Seventh Circuit authority similarly holds that a district court "may rely on evidence of rates charged by similarly experienced attorneys" (such as Silver's counsel). *See Montanez*, 755 F.3d at 553. But the "best evidence of an attorney's market rate is his or her actual billing rate for similar work," *Johnson*, 668 F.3d at 933, and the "best evidence of the value of the lawyer's services is what the client agrees to pay him." *Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 361 F.3d

434, 438 (7th Cir. 2004). The Court has considered all of this information—the rates charged by the Board's counsel in this and other cases (Dkt. 171-2, ¶¶ 1-7), the fees actually paid by the Board (*id.* at ¶ 8), and the rates charged by Silver's counsel, though unpaid (Dkt. 171-4)—and has independently determined that the hourly rates charged by the Board's counsel in this case were in fact reasonable.

This leaves only the number of "hours reasonably expended" to be determined, which in turn presents two issues. The first is Silver's assertion that "many" of the time entries on the attorney invoices tendered by the Board "are excessive, redundant, or unnecessary." Dkt. 174, at 13. It is certainly true that hours "are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). But a respondent "must detail his objections to the fee petition such that the court can determine what portion of the fees, if any, were not reasonably expended." *RK Co. v. See*, 622 F.3d 846, 854 (7th Cir. 2010). Local Rule 54.3 similarly requires "clarity and specificity in objections to fee petitions" and does not "allow for the shifting to the court of the objector's responsibility to particularly delineate those fees with which it takes issue and to meaningfully explain why each item claimed to be unreasonable or otherwise noncompensable should be disallowed." *Nilssen v. General Elec. Co.*, No. 06 C 4155, 2011 WL 633414, at *10 (N.D . Ill. Feb. 11, 2011). Contrary to these requirements, Silver challenges only a "sampling" of 27 entries alleged to be "redundant," "block billing," "vague," or "double billing." Dkt. 174, at 13-14, 28-39. Silver's remaining objections are one-word notations on the Board's attorney invoices. *See* Dkt. 171-3.

The Court surmises that Silver singles out so few time entries out of over 200 pages of invoices because the Board itself reduced the entries for which it sought fees in response to Silver's objections. The Board explains that it paid $411,818.66 in attorneys' fees for 1,266.60 hours of work, but after reviewing Silver's objections, "agreed to reduce its requested fee award to $360,908.12." Dkt. 171, at 4-5. That "first pass" by the Board apparently left Silver with relatively few entries to criticize. Nevertheless, Silver asks the Court to reduce the Board's fee award much further, to $188,888.66, "to reflect reasonable fees." Dkt. 174, at 3. The bulk of the objections underlying this figure (all but $16,010) take the form of one-word notations on the Board's attorney invoices, such as "Vague," "Block," "Redundant," Excessive," or "Unnecessary." *See* Dkt. 171-3. Such cryptic criticisms fail "to meaningfully explain why each item claimed to be unreasonable or otherwise noncompensable should be disallowed." *Nilssen*, 2011 WL 633414, at *10. Still, although the Court is not obliged to scour the invoices to decipher Silver's objections, it has nevertheless endeavored to do so and finds them to have no merit, except as stated below. *See Stark*, 354 F.3d at 674 (affirming review "accomplished without significant help" from respondent).

As to Silver's objections to "block billing," both on the invoices (Dkt. 171-3) and in his "sampling" (Dkt. 174, at 35), the Court finds nothing objectionable about the challenged billing descriptions. "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras*, 433 F.3d at 569. And further supporting the appropriateness of these time entries is the fact that the Board paid its fees (Dkt. 171-2, at ¶ 8); "if counsel submit bills with the level of

detail that paying clients find satisfactory, a federal court should not require more." *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008) (brackets omitted, quoting *In re Synthroid Mkt'g Litig.*, 264 F.3d 712, 722 (7th Cir. 2001)). The same is true of the vast majority of entries Silver challenges as "vague" on the invoices (Dkt. 171-3) and in his "sampling" (Dkt. 174, at 37). Still, that said, the Court does find merit in Silver's vagueness challenges to descriptions relaying merely "Review litigation issues," "Review case materials and filings," or "Review litigation reports." *See* Dkt. 174, at 37; Dkt. 171-3, at 116. The Court also notes that the Board itself has struck many such entries to which Silver objected (*see* Dkt. 171-3 *passim*) tacitly conceding their inadequacy, although a small number appear to have slipped through the Board's net. The Court therefore strikes such billing entries and reduces the Board's claimed fees by the amount they represent ($2,275.00). *See* Dkt. 171-3, at 8-9, 19-20, 24, 66, 91, 116.

The Board also culled entries that Silver challenged as redundant. While the Board conceded a smaller number of such entries (approximately 20), that appears to be because the invoices reflect very little duplication. Indeed, even Silver highlights only 18 entries as "excessive," "unnecessary," "duplicative," "redundant," or "double-billed" in his "sampling." *See* Dkt. 174, at 29, 31, 33, 39), one of which appears nowhere on the invoices. *See id.*, at 39 (4th entry for $630). Having reviewed each of these objections, along with Silver's additional objections noted on the invoices themselves, and having compared those time entries with the entries that the Board conceded, in order to determine if any duplicative or excessive entries remain, the Court strikes the following 13 time entries and reduces the Board's claimed fees by the

amount they represent ($7,605.00). *See* Dkt. 174, at 29 (objections 2-7), 31 (objections 1-2), 33 (objections 2-3), 39 (objections 1-3).

This leaves only one remaining issue raised by Silver's challenge to the reasonableness of the fees sought by the Board—whether any reduction is required for the parties' settlement discussions. *See Johnson*, 668 F.3d at 933 ("substantial settlement offers should be considered in determining reasonable attorney's fees") (citing *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) ("Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply.")). As noted above, this Court's summary judgment ruling ordered an accounting of Mid-America's assets "to determine the appropriate damage amount," and granted Defendants the opportunity "to contest the amount requested at the appropriate time." Dkt. 141, at 32-33. But as also explained above, the parties ultimately stipulated to damages of roughly $400,000.00, which Silver paid within days of the Board filing a motion for judgment seeking that amount. Dkt. 155, at 2, 5. The Board faults Silver for the Stipulation, complaining that he "ignored the court's order to conduct an accounting of MAV's assets to determine the proper amount of damages, requiring the Fund's counsel to determine a figure and negotiate back and forth with Silver's counsel for months until the parties ultimately agreed on a stipulated damages amount." Dkt. 171, at 7. But Silver maintains that he "worked with the Fund to reach a mutually acceptable agreement," as a result of which "the parties entered into a stipulation as to damages and Silver paid the stipulated amount." Dkt. 174, at 1-2.

The Board's invoices support Silver on this point, with time entries beginning in March 2015 repeatedly referring to Silver's "settlement proposal," "settlement issues," and "stipulation issues." *See* Dkt. 171-3, at 187-211. The question is, when did the parties' settlement discussions begin and how long did they last? *See Moriarty v. Svec*, 429 F.3d 710, 720 (7th Cir. 2005) ("the district court must offer an explanation as to why it chooses to use one substantial offer as a cut-off, but not another"). While the Board's invoices contain passing references to settlement-related issues prior to March 2015, they make clear that as of March 2015 the parties were devoting significant time to a "settlement proposal" made by Silver, and those discussions continued for months, even after the parties filed their damages Stipulation. *See* Dkt. 171-3, at 187-211.

Indeed, as also noted above, although Silver signed the parties' damages Stipulation on June 19, 2015, it was not to be "filed with the Court until thirty (30) days after the Trustees respond to Defendant Silver's settlement offer, or for such longer period as the parties may agree while they continue to pursue settlement negotiations." Dkt. 145. The Board then waited until August 20, 2015 to file the Stipulation, *id.* and then waited another two months to file its motion seeking judgment and prejudgment interest, after which Silver paid the stipulated damages a few days later. *See* Dkt. 155, at 2, 5. This timing is consistent with the Board's attorney invoices, which reflect numerous entries between March and October 2015 relating to settlement issues and the stipulated damages amount, Dkt. 171-3, at 187-211; and in the following months, regarding settlement and Silver's payments of the stipulated damages and prejudgment interest, *id*. at 217-20; and then relating to an "attorneys' fees proposal." *Id*. at 220.

16

A district court retains discretion to reduce a fee award to account for such settlement discussions. *Moriarty*, 429 F.3d at 720 (district court "may find that although a substantial offer is an important factor in determining attorneys' fees, [the respondent] is liable for some portion of attorneys' fees incurred after a substantial offer was made"). Here, the Board's attorney invoices reflect a settlement proposal as early as March 2015,[4] and continuing discussions which produced a damages Stipulation that Silver paid, rather than contesting the Board's damages, as the Court had allowed him to do. Dkt. 141, at 32-33. And while the invoices certainly reflect other activities between March 2015 and February 2016 (more in some months than others), it appears that approximately half the entries during this timeframe concern settlement and stipulation-related issues, before and after the parties' Stipulation, followed by attorney attention to Silver's payments, and ending with an "attorneys' fees proposal" which apparently bore no fruit. *See* Dkt. 171-3, at 187-222. Given the significant time spent on settlement-related issues during this period, the Court reduces the Board's fee award by 50% of the fees incurred between March 2015 and February 2016 ($14,235.00).

---

4 As noted above, the Board's attorney invoices contain passing references to "settlement" issues before March 2015, but none that convince the Court that a "substantial offer" was under discussion before then; nor has Silver asserted one. Instead, Silver seeks an offset to the Board's attorneys' fees of roughly $142,700, which purportedly represents the additional value of his settlements with various providers outside of this litigation unaccounted for in the parties' damages stipulation (because Silver allegedly settled with those providers at a discount). *See* Dkt. 174, at 12-13. Silver cites no support for such an offset, however, and the Court sees no logic to one. For one thing, Silver has no basis to challenge a damages amount to which he stipulated. But also, this Court is in no position to assess whether or to what extent the Board benefited from any such discounted settlements, and is therefore in no position to reduce the fees that the Board actually incurred as a result of Silver's actions.

Accordingly, the Court reduces the fees sought by the Board by $2,275.00 (for sustained vagueness objections), by $7,605.00 (for sustained redundancy objections), and by $14,235.00 (for substantial settlement discussions), for a total reduction of $24,115.00, reducing the Board's claimed fees from $360,908.12 to 336,793.12.

## CONCLUSION

For the foregoing reasons, Defendant Lawrence Silver's Motion for Review of Plaintiff's Bill of Costs [165] is granted in part and denied in part as explained above; the Plaintiff Board of Trustee's Motion for Attorneys' Fees and Costs [170] is granted in part and denied in part as explained above; and the Board is awarded costs of $7,896.29 and fees of $336,793.12.

So ordered.

Dated: August 18, 2016

_____
Charles P. Kocoras
United States District Judge